# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### Southern Division

| | | |
|---|---|---|
| **DOUGLAS E.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. CBD-20-2126** |
| | ) | |
| **KILOLO KIJAKAZI[1],** | ) | |
| | ) | |
| **Commissioner,** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Douglas E. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner").  The Administrative Law Judge ("ALJ") denied Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA").  Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. 16, Plaintiff's Alternative Motion for Remand ("Plaintiff's Alternative Motion"), ECF No. 16, and Defendant's Motion for Summary Judgment ("Defendant's Motion"), ECF No. 17.  The Court has reviewed the motions, related memoranda, and the applicable law.  No hearing is deemed necessary.  *See* Loc. R. 105.6 (D. Md.).  For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Defendant's Motion, **GRANTS** Plaintiff's Alternative

---

[1] When this proceeding began, Andrew Saul was the Acting Commissioner of the Social Security Administration. On July 9, 2021, Kilolo Kijakazi was sworn in as Commissioner and is therefore, automatically substituted as a party.  *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Motion, and **REMANDS** the ALJ's decision pursuant to the fourth sentence of 42 U.S.C. §

405(g) for further proceedings consistent with this opinion.  A separate order will issue.

## I.        Procedural Background

On September 11, 2017, Plaintiff filed for DIB under Title II of the SSA, alleging

disability beginning March 21, 2017.  R. 15.  Plaintiff alleged disability due to osteoarthritis in

both shoulders, back, neck, and both knees; and a mini stroke – Transient Ischemic Attack.  R.

80, 92.   Plaintiff's claim was initially denied on January 30, 2018, and upon reconsideration on

July 2, 2018.  R. 15.  An administrative hearing was held on July 30, 2019.  R. 15.  On August

23, 2019, the ALJ denied Plaintiff's claim for DIB.  R. 26.  Plaintiff sought review by the

Appeals Council, which concluded on May 21, 2020, that there was no basis for granting the

request for review.  R. 1.  Plaintiff subsequently filed an appeal with this Court.  ECF No. 1.

## II.       Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the

ALJ "with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2019).

The Court must affirm the ALJ's decision if it is supported by substantial evidence and the

ALJ applied the correct law.  *Id.*  ("The findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v.*

*Comm'r of Soc. Sec.*, 440 F. App'x 163-64 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d

1453, 1456 (4th Cir. 1990)).   "In other words, if the ALJ has done his or her job correctly

and supported the decision reached with substantial evidence, this Court cannot overturn the

decision, even if it would have reached a contrary result on the same evidence."  *Schoofield*

*v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002).  Substantial evidence is "more than a

mere scintilla."  *Russell*, 440 F. App'x at 164.  "It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'").  The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456 (citations omitted).  If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Title II if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) (2012).  The Code of Federal Regulations outlines a five-step process (Five–Step Analysis) that the Commissioner must follow to determine if a claimant meets this definition:

3

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i) (2012). If he is doing such activity, he is not disabled. If he is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509], or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii) (2012). If he does not have such impairment or combination of impairments, he is not disabled. If he does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii) (2012). If he does have such impairment, he is disabled. If he does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv) (2012). If he can perform such work, he is not disabled. If he cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v) (2012). If he can perform other work, he is not disabled. If he cannot, he is disabled.

20 C.F.R. § 404.1520(a)(4) (2012). Plaintiff has the burden to prove that he is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. § 404.1545(b)–(c) (2012). In making this assessment, the ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)); *see also* 20 C.F.R. § 404.1545(a) (2012). The ALJ must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence

(e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *See Thomas*, 916 F.3d at 311; SSR 96-8p, 1996 WL 374184 at *7 (S.S.A. July 2, 1996). "Once the ALJ has completed the function-by-function analysis, the ALJ can make a finding as to the claimant's RFC." *Thomas*, 916 F.3d at 311. "[R]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

## III. Analysis

The ALJ evaluated Plaintiff's claim using the Five–Step Analysis. R. 17–26. At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since March 21, 2017. R. 17. At step two, under 20 C.F.R. § 404.1520(c) the ALJ determined that Plaintiff had the following severe impairments: status post cerebral vascular accident, chronic small vessel ischemic disease with old left occipital infarct, and reduced right field of vision. R. 17. The ALJ stated that the listed impairments were severe because they "significantly limit [Plaintiff]'s ability to perform basic work activities." R. 17. At step three, the ALJ determined Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526)." R. 21. Before turning to step four, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations:

> [Plaintiff] can lift, carry, push or pull up to 20 pounds occasionally and up to 10 pounds frequently. [Plaintiff] can sit for 6 hours of an 8-hour workday and can stand or walk for

5

up to 6 hours of an 8-hour workday.  [Plaintiff] can frequently handle with the right nondominant upper extremity.  [Plaintiff] can frequently climb ramps or stairs, but cannot climb ladders, ropes, or scaffolds.  [Plaintiff] can occasionally balance and can frequently stoop, kneel, crouch, or crawl.  [Plaintiff] can perform work where objects do not approach [Plaintiff] from the right side.  [Plaintiff] can avoid ordinary hazards in the workplace such as boxes on the floor, doors ajar, and approaching people or vehicles. [Plaintiff] must avoid concentrated exposure to extreme temperatures, humidity, fumes, odors, dusts, gases, and other pulmonary irritant and to hazards such as moving machinery and unprotected heights.

R. 21-22.  At step four, the ALJ determined Plaintiff can perform his past relevant work as a

dispatcher.  R. 26.  The ALJ ultimately found that Plaintiff has not been under a disability, as

defined in the SSA.  R. 26.

On appeal, Plaintiff argues that the Court should reverse the final decision of the ALJ, or

in the alternative, remand the case to the Commissioner for further proceedings, alleging that

Defendant's final decision is not supported by substantial evidence.  Pl.'s Mot. 1, ECF No. 16.

Specifically, Plaintiff avers that "the ALJ's step 4 denial is contrary to law because the denial is

based on a 'composite' past job."  Pl.'s Mem. in Supp. of Pl.'s Mot. 1, ECF No. 16–1.  This

Court agrees.

As stated above, at step 4 of the Five-Step Analysis, the ALJ must determine whether

Plaintiff retains the RFC to perform "past relevant work."  20 C.F.R. § 404.1520(a)(4)(iv); *see*

*also Thompson v. Astrue*, 442 F. App'x 804, 806 (4th Cir. 2011).  "[A] claimant will be found

'not disabled' if he is capable of performing past relevant work either as he performed it in the

past *or* as it is generally required by employers in the national economy." *Pass v. Chater*, 65

F.3d 1200, 1207 (4th Cir. 1995) (citing SSR 82-61, 1982 WL 31387).  Plaintiff has the burden to

show that he cannot perform his past relevant work.  *Id.*; *Hunter*, 993 F.2d at 35.  Even so, the

ALJ must make factual findings as to the physical and mental demands of Plaintiff's past

relevant work and determine whether Plaintiff's RFC permits Plaintiff to return to such work.  20

C.F.R. § 404.1520(e), (f). *See Plumb v. Astrue,* C/A No. 8:10–3090–RBH, 2012 WL 768058 at

*6 (D.S.C. Mar. 7, 2012); *Jacob N. v. Berryhill,* No. 5:17-CV-00057, 2018 WL 4688741, at *6

(W.D. Va. Sept. 28, 2018).

Plaintiff avers that "the ALJ gave no consideration to the VE's description of Plaintiff's

past relevant work as containing significant aspects of more than one DOT title . . . i.e., a

composite job." Pl.'s Mem. in Supp. of Pl.'s Mot. 5. Pursuant to Social Security Ruling 82-61, a

composite job is one that has "significant elements of two or more occupations and, as such,

[has] no counterpart in the DOT." [2]  SSR 82-61, 1982 WL 31387, at *2 (S.S.A. 1982); *see also*

*Program Operations Manual System* ("*POMS*") DI 25005.020B, ("the claimant [may have

performed a composite job] if it takes multiple DOT occupations to [explain] the main duties of

the [claimant's] past relevant work as described by the claimant"),

https://secure.ssa.gov/apps10/poms.nsf/lnx/0425005020.  If an ALJ determines that a claimant's

past relevant work was a composite job, he must explain how he reached that

conclusion. *Program Operations Manual System* ("*POMS*") DI 25005.020B.  An ALJ can only

find a claimant capable of performing past relevant work that was a composite job if he can

perform all parts of the job. *Id.*  "Because a composite job has no equivalent in the DOT,

'the ALJ must find the Plaintiff capable of performing the composite job only if he or she can

perform all parts of the job' as it was actually performed." *Taylor v. Colvin*, No. 1:14CV629,

2015 WL 4726906, at *4 (M.D.N.C. Aug. 10, 2015) (citing *Shealy v. Colvin*, No. 8:13–2383–

RMG, 2015 WL 467726, at *12–13 (D.S.C. Feb. 4, 2015)).  Further, because a composite job

[2] Although the case law in Maryland is scarce, and the Fourth Circuit has yet to address composite jobs, other district courts in the Fourth Circuit have provided guidance on this issue. *See Lewis v. Saul*, No. 1:17CV1115, 2020 WL 33118, at *5 (M.D.N.C. Jan. 2, 2020); *Jones v. Colvin*, No. 3:15CV195 (MHL), 2016 WL 786626, at *3 (E.D. Va. Feb. 4, 2016), report and recommendation adopted, No. 3:15CV195 (MHL), 2016 WL 816792 (E.D. Va. Feb. 26, 2016).

does not have a DOT counterpart, the ALJ should not evaluate the job using the "as generally performed in the national economy" test in the regulations.  *See Jacob*, 2018 WL 4688741, at \*6; *see also* SSR 82-61, 1982 WL 31387, at \*2.  "Instead, the ALJ should consult a vocation expert to assess the overlapping functions of multiple jobs."  *Id.*; *see also* SSR 82-61, 1982 WL 31387, at \*2.

Here, at step four of the Five-Step Analysis, the ALJ determined Plaintiff could perform his past relevant work as a dispatcher.  R. 26.  Specifically, the ALJ found:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that [Plaintiff] is able to perform one of the jobs.  The vocational expert stated that a hypothetical person with [Plaintiff]'s age, education, work experience, and residual functional capacity (internal citations omitted) would be unable able [sic] to perform the job of Industrial Cleaner as actually or generally performed but would be able to perform the job of Dispatcher as actually and generally performed.

R. 26.  This Court's analysis will focus on the dispatcher job, since that is the only job the ALJ found that Plaintiff could perform.  During the administrative hearing, the ALJ asked Plaintiff questions about his Work History Report.  R. 40–52.  When the ALJ asked Plaintiff how much he made an hour for one of the jobs listed on the Work History Report, Plaintiff stated he had "no idea what he made."  R. 41.  Upon clarification, Plaintiff stated, "I don't know.  I mean I don't know if I filled it out, or my sister filled it out for me."  *Id.*  When the ALJ tried to refresh Plaintiff's memory with more details on the Work History Report, Plaintiff stated, "I remember what I did, but I don't know – I can't tell if I filled it out.  I don't know."  R. 42.  Given this information, the ALJ decided to move on and discuss Plaintiff's past relevant work.  Upon questioning by his attorney, Plaintiff testified that as a dispatcher, besides desk and cleaning duties, he helped out truckers, and "[i]f they miss[ed] the pin, [he would assist the truckers] and it would take hours to get it up on the truck."  R. 51.  Plaintiff explained that it involved

"[j]acking the trailer up as high as [they could get] so they [could] pull the trailer out." *Id.*
Plaintiff also testified that he performed that duty, at least once a week, if not two to three times
a week.  Plaintiff stated that it took approximately two to three hours to get it fixed and resolve
the trucker's issue. *Id.*

When the ALJ questioned the VE about Plaintiff's past relevant work, the VE classified
his work as an industrial cleaner and a dispatcher.  R. 61–62.  The ALJ posed four hypotheticals
to the VE.  R. 62–65.  The VE stated Plaintiff could perform his past work as a dispatcher for the
first three hypotheticals, but not for the fourth hypothetical. *Id.*  Plaintiff's attorney then
questioned the VE and changed the hypothetical.  With this altered hypothetical, the VE stated
that as the dispatcher job is primarily sedentary, "there would be fewer or little to no hazards I
can think of."  R. 67.  Plaintiff's attorney then stated, "glad you mentioned that, because I
definitely need to make sure you understood or heard the testimony of [Plaintiff] regarding what
he did in the dispatch job." *Id.*  Without further explanation, the VE stated, "As he performed it,
it may not be [a job he could perform], because he did the cleaning, and he did other work that
was involved.  But as the dispatcher job is normally performed in the national economy . . . that
would still stand."  R. 67–68.  The VE further testified that "[Plaintiff] said sometimes he would
help out the drivers.  So obviously, there was more involved than just dispatching."  R. 68.
Plaintiff's attorney inquired further and asked the VE what the DOT code would be for the job
helping truckers as Plaintiff described it – assisting truckers help jack up the truck if they missed
the pin.  R. 68.  The VE classified this job as a truck driver helper or a truck mechanic helper,
both of which are at the heavy exertional level.  R. 69.  The VE clarified and said it would be the
truck mechanic helper. *Id.*  The VE also testified that the truck mechanic helper type of work, he
has never seen in a dispatch type of job. *Id.*  Lastly, the VE testified that any cleaning associated

with a dispatch job would be an industrial cleaner position or at least a housekeeping cleaner position, and that there would be no transferable skills from the cleaning jobs or the truck mechanic helper job. R. 69–70. The ALJ then asked the VE:

> If, in fact, the hypothetical individual did past work that was sedentary dispatch work, but included a few tasks that were not the typical dispatch work, would there be transferable skills under the hypotheticals described to the dispatch job, the solo dispatch job without those additional duties?

R. 72. The VE answered that there would be transferable skills as generally performed. *Id.* The ALJ then asked the VE the same hypothetical he asked earlier which only included dispatcher duties as generally performed, and the VE confirmed he could perform those duties as generally performed. R. 72–73. Plaintiff's attorney clarified whether the ALJ was simply going back to the original testimony that Plaintiff could perform the dispatcher job without the additional duties. R. 73. The ALJ confirmed that she was and stated that "[Plaintiff's attorney] was adding duties to [Plaintiff's] dispatch job totally different from what's in the work history report, very different." R. 73–74. The ALJ explained that Plaintiff can still perform the job as a dispatcher as it is "normally performed." R. 74. Plaintiff's attorney explained to the ALJ that the testimony suggests that in order to classify the dispatcher job properly, more than one DOT code is needed. *Id.* Although the VE produced a second DOT code for Plaintiff's dispatcher job, for the duties associated with the truck mechanic helper, the ALJ stated that she did not agree with Plaintiff's attorney. *Id.*

Considering testimony from both Plaintiff, the VE, and argument from Plaintiff's counsel that Plaintiff's past relevant work as a dispatcher involved different duties as actually performed, the Court finds that the ALJ erred by summarily rejecting Plaintiff's contention that his past relevant work as a dispatcher was a composite job. *See* SSR 82-61, 1982 WL 31387, at *2

There is ample evidence in the record to suggest that Plaintiff's job as a dispatcher was a composite job. First, Plaintiff testified that as a truck dispatcher, he helped out the truckers – at least once a week and sometimes two to three times a week – jack up the trailer as high as it could go, if they missed the pin. R. 51. He also stated that this process would take two to three hours to pull the trailer out and resolve the issue. *Id.* Next, the VE testified that as Plaintiff performed the dispatcher job, he may not be able to perform the job in the hypothetical, since he did the cleaning, and "other work was involved." R. 68. Upon inquiry from Plaintiff's attorney, the VE also testified that the DOT code for the other duties Plaintiff performed as a dispatcher, would be a truck driver helper or truck mechanic helper performed at the heavy exertional level. R. 68–69. The ALJ ignored the fact that the VE produced a specific DOT code for Plaintiff's truck duties, which was different from the DOT code for a dispatcher. *See Shealy*, 2015 WL 467726, at \*12 ("In the event the main duties of past relevant work can only be described by considering multiple *DOT* occupations, a plaintiff may be considered to have performed a composite job."). Also, Plaintiff's attorney informed the ALJ that according to the testimony, more than one DOT code was needed to classify Plaintiff's job accurately, and that the ALJ could not deny disability at step four, unless Plaintiff could perform all parts of the composite job. R. 74. Even so, the ALJ repeatedly ignored the testimony that suggested Plaintiff's job as a dispatcher was a composite job.

The ALJ also erred because he did not identify any job duties or requirements associated with the dispatcher job, that Plaintiff could do, preventing the Court from engaging in meaningful review. *Jacob N.*, 2018 WL 4688741, at \*6 (citing *See* 20 C.F.R. § 404.1560(b)) ("In order for the Court to engage in meaningful review of a disability determination made at step four, the ALJ must, at a minimum, explain the past job or identify the duties that she finds

the claimant has the RFC to perform.").  The ALJ also failed to identify the physical and mental demands of the job and explain whether Plaintiff's RFC permitted Plaintiff to return to his past relevant work, other than to say, "[Plaintiff] is able to perform one of the jobs."  *See Jacob N.*, 2018 WL 4688741, at *6 ("the ALJ failed to identify the particular physical and mental demands of the job, other than to say it was sedentary, skilled, and SVP 6" insufficient); *see also*, *e.g.*, *Plumb*, 2012 WL 768058, at *6 (the ALJ's statement "in comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed" insufficient); *see also*, *e.g.*, *Shealy*, 2015 WL 467726, at *14 (D.S.C. Feb. 4, 2015) (finding that where the ALJ did not discuss the plaintiff's demands of an order clerk job, except to mention that "the VE found it to be sedentary and semi-skilled" insufficient.).

Moreover, the ALJ erroneously "divided the demands of a composite job. . . into separate positions and found Plaintiff capable of performing only the least demanding job, and even then, only as generally, rather, than actually performed."  *Lewis*, 2020 WL 33118, at *4 (citing *Shealy*, 2015 WL 467726, at *13 (noting that an ALJ may not find a claimant capable of performing past relevant work by dividing the demands of a composite job into two separate jobs and finding the claimant capable of performing the less demanding of the two jobs.)); *see also Yoakum v. Comm'r of Soc. Sec.*, No. 1:14CV74, 2015 WL 1585745, at 24 (N.D.W. Va. Apr. 9, 2015) (finding that the ALJ erred by dividing the demands of the plaintiff's composite job into two separate jobs and finding that the plaintiff could perform work as a cashier, the least demanding of the two jobs.).

Defendant argues that substantial evidence supported the ALJ findings that Plaintiff could perform his past relevant work.  Def.'s Mem. in Supp. of Def.'s Mot. 6.  Defendant asserts

that Plaintiff did not dispute that a "claimant with his RFC could perform the dispatcher job." *Id.*
at 8.  Defendant's interpretation of how an ALJ should perform the step four analysis and how
the ALJ should evaluate composite jobs is misplaced.  Although it is Plaintiff's burden to show
that he cannot perform past relevant work at step four, it is the ALJ's duty to fully develop the
record and clarify any ambiguities.  *See Shealy*, 2015 WL 467726, at *11

> The decision as to whether the claimant retains the functional capacity to perform past
> work which has current relevance has far-reaching implications and must be developed
> and explained fully in the disability decision.  Since this is an important and, in some
> instances, a controlling issue, every effort must be made to secure evidence that resolves
> the issue as clearly and explicitly as circumstances permit;

*Hunter*, 993 F.2d at 35.  Thus, the ALJ had an independent obligation to fully develop the record.
*See Shealy*, 2015 WL 467726, at *6–7 (D.S.C. Feb. 4, 2015) (citing *Cook v. Heckler,* 783 F.2d
1168, 1173 (4th Cir.1986) ("The ALJ has a duty to fully and fairly develop the record.").

  Here, the record is absent of any meaningful analysis at step four.  The ALJ offered no
explanation of whether Plaintiff's job as a dispatcher, qualified as a composite job.  *See Shealy*,
2015 WL 467726, at *12 ("the ALJ failed to properly explain his reasoning for finding the job of
'order clerk' to be past relevant work for Plaintiff as opposed to finding it to be part of
a composite job."); *see also e.g.*, *Plumb*, 2012 WL 768058 *6 (finding remand appropriate for
the ALJ to determine whether the job constituted a composite job, when the VE testified that the
claimant's work broke down into two DOTs, but the ALJ did not discuss whether it qualified as
a composite job.); *Lewis v. Saul*, No. 1:17CV1115, 2020 WL 33118, at *5 (M.D.N.C. Jan. 2,
2020) (finding that the ALJ erred at step four when the ALJ failed to discuss whether the job was
composite where the VE stated that the plaintiff's prior job duties as an order clerk were always
performed with the duties of material handler or store's laborer."); *Jones*, 2016 WL 786626, at

*4 (citing SSR 82–62, at *4) (finding error where the ALJ failed to "clearly explain his decision when finding [the plaintiff disabled] at step four.").

Furthermore, even if the ALJ declined to adopt Plaintiff's job as a composite job at step four, the ALJ failed to explain his reasoning. *See* SSR 82–62, at *4 (the ALJ has a duty to clearly explain his decision when finding a claimant disabled at step four); *see also Jones v. Colvin*, No. 3:15CV195 (MHL), 2016 WL 786626, at *4 (E.D. Va. Feb. 4, 2016), report and recommendation adopted, No. 3:15CV195 (MHL), 2016 WL 816792 (E.D. Va. Feb. 26, 2016) (finding that the ALJ erred by not considering the plaintiff's job as a composite job nor accompanying his decision with an explanation. The court also found that "[the ALJ] may have decided it did not constitute a composite job . . . but again, [the ALJ] offered no explanation for that decision.").

The Court also finds that the ALJ's reasoning for erroneously analyzing Plaintiff's composite job, is insufficient. The ALJ ignored Plaintiff's testimony, the VE's testimony, as well as Plaintiff's counsel's argument, regarding Plaintiff's composite job, because his additional job duties were not listed in the Work History Report.[3] R. 61, 73– 74. Plaintiff testified that he did not remember filling it out, and that his sister could have filled it out for him. R. 41. Plaintiff also testified throughout the hearing that he has significant memory loss. Thus, the ALJ was required to "inquire fully into each relevant issue," and address any ambiguities. *Id.* (citing *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962); *see also Yoakum*, 2015 WL 1585745, at *25 ("The ALJ has a basic obligation to fully and fairly develop the record, including clarifying any ambiguity with regard to a claimant's past relevant work.").

---

[3] Although the job of the industrial cleaner is not the focus of this appeal, the Court notes that the ALJ ignored the VE's testimony and effectively interrupted him, when the VE tried to discuss Plaintiff's testimony and how it was actually performed. R. 61. The ALJ reasoned that there was no reason for the VE to elaborate further because he is referring strictly to the Work History Report. *Id.*

In this case, the Court is prevented from engaging in meaningful review and is left to speculate whether the ALJ considered the evidence regarding the composite job or followed the applicable regulations.  Thus, the Court cannot determine whether the ALJ's decision regarding Plaintiff's composite job as a dispatcher, was supported by substantial evidence.  *See Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (The ALJ's explanation acts as a "necessary predicate to engaging in substantial evidence review.").

Accordingly, remand is appropriate so the ALJ can consider and adequately explain whether Plaintiff's work as a dispatcher, is a composite job.  On remand, the ALJ should fully explain his reasoning, considering all testimony and evidence, and any ambiguities or conflicting statements.  If the ALJ finds that Plaintiff's past work is a composite job, the ALJ should explain whether Plaintiff has the RFC to perform the exertional demands of all the tasks of the composite job.  The ALJ shall also consider whether the Medical Vocational Guidelines apply.

**IV.    Conclusion**

Based on the foregoing, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, **GRANTS** Plaintiff's Alternative Motion and **REMANDS** this matter for further proceedings.

March 8, 2022                                                   /s/

                                                   Charles B. Day
                                                   United States Magistrate Judge

CBD/pjkm

15